186 So. 599

**BERNARD v. JEFFERSON.**

No. 34916.

Jan. 10, 1939.

Rehearing Denied Feb. 6, 1939.

Charles J. Mundy, of New Orleans, for appellant.

E. Scharpe Landry, of New Orleans, for appellee.

LAND, Justice.

(1) On or about June 30, 1926, petitioner married defendant, Mary Robinson, widow of Dave Jefferson, in the City of New Orleans.

On or about February 19, 1933, petitioner alleges that he separated from his wife and since that date they have not lived together as man and wife.

No children were born of the marriage and no property was acquired by the community.

Petitioner sues for an absolute divorce, under Act No. 31 of 1932, amending Section 1 of Act No. 269 of 1916. The section, as amended, provides: "That when married persons have been living separate and apart for a period of four years or more, either party to the marriage contract may sue, in the courts of his or her residence within this State, provided such residence shall have been continuous for the period of four years, for an absolute divorce, which shall be granted on proof of the continuous living separate and apart of the spouses, during said period of four years or more."

Defendant excepted and objected to the right of plaintiff to try the case on January 6, 1938, the date fixed for trial for the following reasons:

"1st. That this case is not at issue at this time.

"2nd. That no default has been rendered or taken herein against defendant, present mover.

"3rd. That defendant has filed no answer herein."

In answer to these objections, the trial Judge states in his per curiam: "This matter being one for a divorce based upon the ground of four years separation, and due to the financial condition of the parties, this Court stated that it would not require the plaintiff to deposit the sum of $15.00, but would order the case fixed for trial, in order that the defendant and her counsel could be present in court when the case was taken up, on the merits. In view of that statement, which was made by this Court in the presence of counsel for the defendant, that the case would not be permitted to go by default, but would be taken up on a trial of the merits, and in view of the fact that this case has been fixed on the docket, and in view of the exception filed therein by counsel for the defendant this day, this court will permit and order a preliminary default entered herein as of this date and will permit counsel for plaintiff to take the testimony of those witnesses who are present in court today, in the presence of the defendant and in the presence of her counsel, and to be offered at such time as counsel for the plaintiff may attempt to confirm the default. I will permit counsel for the defendant, at the trial of the case today, to put on his client or any other witnesses he may see fit. Take a preliminary default and proceed with the case." Transcript pp. 20, 21.

In addition to this, counsel for defendant dictated the following answer into the record:

"Into court, through her undersigned counsel, comes now Mary Bernard, made defendant in the above-entitled and numbered cause, and for answer to plaintiff's petition alleges as follows:

"Answering Article 1, respondent denies the facts therein stated, but admits that she was married to petitioner on June 4, 1925, and that the matrimonial domicile has always been in the City of New Orleans.

"Paragraph 2 of the petition is admitted, in so far as it is stated that he left her house on February 19, 1933, but denies the remaining allegations of Article II.

"Further answering, respondent says that Henry Bernard, her husband, was a frequent visitor at her house after the month of February, 1933, up to the first part of July, 1936; that he visited her house both day and night, and that on different occasions he spent the night with her, especially on June 6, 1936, and on July 1, 1936.

"Article III of the petition is admitted.

"Article IV of the petition is denied, for the reason that they have cohabited as husband and wife up until the first part of July, 1936, but alleges that since the 1st of July 1936, they have been separate and apart, living under separate roofs, and have not cohabited together as husband and wife.

"Wherefore, respondent prays that plaintiff's suit be dismissed at his cost, and for all general and equitable relief." Transcript pp. 41 and 42.

When the answer was dictated into the record, the trial Judge ordered the case to go over as an open case until Monday, January 17, 1938, and counsel for defendant was instructed to have his witnesses in court on that date. Transcript p. 42.

Defendant also filed an amended and supplemental answer in the case, in which it is averred:

"1. That on the 6th day of January, 1938, by order of this Honorable Court, defendant's counsel dictated to the court stenographer, an answer for the defendant in this cause, for the purpose of dispensing with the court costs of filing a formal answer; which costs defendant was unable to pay.

"2. That at that time, no demand for the payment of alimony was made by defendant.

"3. That on the 14th day of February, 1938, the fact was brought out in open Court on the trial of this case on the merits, that the only income of the plaintiff was a monthly pension of $60.00 allowed the plaintiff, Henry Bernard, as a Spanish War Veteran and that for many months past, the United States Government had, after a thorough investigation of all the facts surrounding the cause or causes of the marital separation of plaintiff and defendant, divided the said sum of $60.00, sending one half thereof, or the sum of $30.00, to Henry Bernard each month and the other one half, or $30.00 to defendant, Mary Robinson Jefferson Bernard.

"4. That the real purpose and intent of this suit was, not so much the desire of plaintiff for a divorce as it was his idea that if he could secure a divorce, that he could thereby have the full amount of his pension restored and the said sum of $30.00 monthly now being paid by the Government to defendant would be taken away from her and paid to him.

"5. That the Judge, in granting the divorce to plaintiff, found from the evidence that the fault of the separation between the spouses was not the fault of the wife, but the fault of the husband, and that therefore the status quo now existing between the plaintiff and the defendant as to the existing division of the pension check of $60.00 each month—$30.00 to each party, as awarded by the Government through the Veteran's Administration, should not be disturbed.

"6. That, therefore, in order that the record should show the above stated facts, this supplemental and amended answer is now filed and in the same, defendant now makes the formal claim to the payment of the said sum of $30.00 monthly which she has heretofore been receiving and prays that the final judgment to be written in this case make this award.

"Wherefore, petitioner prays that this, her supplemental and amended answer be filed, that the formal judgment to be written in this cause, maintain the status quo between herself and the plaintiff, insofar as the monthly payment of the $30.00 pension check is concerned, and for all general and equitable relief and for costs."

It was ordered that this supplemental and amended answer be filed as prayed for. Transcript pp. 9, 10, 11.

The irregularities complained of by defendant in the trial of the case are, therefore, without merit.

■ (2) Judgment was rendered in favor of plaintiff, Henry Bernard, and against Mary Robinson Jefferson, defendant, decreeing an absolute divorce, and granting to

the defendant the privilege to claim alimony at any future time. Transcript p. 15.

In a short opinion, the trial Judge stated:

"It looks to me like this is purely a fight over money matters and over his pension. The Court is satisfied that Henry Bernard has been living separate and apart from Mary Robinson Jefferson over a period of four years. The Court is satisfied that Henry Bernard was the one who left his wife and therefore Henry Bernard is responsible under the statute for alimony for his wife." Supplemental Transcript p. 27.

The defendant, Mary Robinson Bernard, resides at 1217 Teche Street in the City of New Orleans. She admits that plaintiff left the matrimonial domicile on February 19, 1933, and moved all of his personal effects to the house of his cousin, who lived on Nunez Street. She testified that he came to visit her frequently, but that it was only on two occasions, June 6, 1936, and July 1, 1936, that he resumed marital relations with her, and that July 1, 1936, was the last time that he was there. At the date of these two visits, more than three years and three months had elapsed, since the separation on February 19, 1933, and although, during this long period, plaintiff had visited her frequently, not a single act of co-habitation had taken place. This testimony is not only incredible upon its face, but the acts of co-habitation to which defendant testified are denied by plaintiff, who testified that he left the matrimonial domicile and never resumed marital relations with defendant at any time.

The trial Judge did not believe the defendant, nor did he credit the testimony of

her son, William Riley, who stated that he found plaintiff in bed with his mother one night in July 1936. This witness had testified that he had knocked so his mother would let him in, and, consequently, he did not find plaintiff in bed with his mother when he entered the house.

Besides, when this witness was asked: "When did you leave her house to move across the river?" He answered: "On the first part of July, 1936—somewhere between the 1st and 15th of the month."

Considering the relationship existing between these two witnesses, and the fact that, about the time of the co-habitation testified to by the son, he had left his mother's house and had moved across the river, it is doubtful whether he was present at all on the occasion to which he has testified.

Besides, the motive behind this testimony of defendant is apparent. The four year period of separation was rapidly drawing to a close.

The defendant testified that her husband left her February 19, 1933. She was then asked, under cross-examination, the following questions:

"Q. Since that time, you haven't lived with him, as man and wife? A. He came back and forth and slept there twice.

"Q. Twice in the last four years, since 1933? A. Yes, sir. Because 1936, that was inside four years, four years would not be until the 19th of February, 1937, and he came inside the four years." Supplemental Transcript pp. 18, 19.

By the Court:

"Q. How much do you get from the Government? A. The Government give me half; I get $30.00 and he gets $30.00.

\*    \*    \*    \*    \*    \*

"Q. If you weren't his wife, you would not be entitled to it? A. Sure not, if I am not his wife. I am legally married to him. Supplemental Transcript p. 19.

"Q. But you took the date of the times he lived with you? A. Yes; I took the date he come there and slept there, all right, I sure did take that one when he came and slept there, because they told me when a man comes and sleeps with you that he is not separated from you.

"Q. Who told you? A. I went and found out.

"Q. From whom? A. I went up to the Government.

"Q. The Government? A. In the Masonic Temple Building where the headquarters be at, one of the Government men told me. He asked me, he said, any time your husband comes and sleep with you in your house, he is not separated from you. He is considered man and wife. I went up there to the Masonic Temple on St. Charles St." Supplemental Transcript pp. 20, 21.

Defendant knew precisely what to swear to, in order to interrupt the four years' separation, and to maintain her status as a wife, and her claim to one-half of the pension of plaintiff—and she did it.

When plaintiff moved from the matrimonial domicile, he carried with him all of his belongings, a fact showing his intention to make a final separation. The house to which he moved was not that of his

cousin, as defendant testified, but was the house of his niece, Mosella Willis, who lives at 417 Socrat Street, Algiers.

This witness testified as follows:

"By Mr. Landry:

"Q. Mosella, do you remember just about when Bernard left his wife? A. It was in February, 1933, when he moved his chifforobe and came to my house.

"By the Court:

"Q. And he has been living in your house ever since? A. Well, he lived with me about a year and something, and he moved from my house to Buddie Roy's house, and in 1934 he moved from Buddie Roy's house down in McDonoghville.

"Q. And do you know that he has lived away from his wife all that time? A. Yes, sir; I never knew him to go back.

"Q. Did you visit down there? A. Yes, sir; he often came to my house.

"Q. Do you know where his wife lived? A. Yes, sir.

"Q. Where? A. She lived on Teche Street and her husband did not live with her there. I never knowed him to go back there since he left." Transcript pp. 22, 23.

Robert Smith testified that he was with plaintiff during the American-Spanish War; that plaintiff and his wife were living within four blocks of him; and that plaintiff was at his house frequently.

"By the Court:

"Q. Do you know when he lived with his niece? A. Yes, sir; when he first left her he lived with his niece.

 

"Q. How long did he stay there? A. Well, I couldn't just tell.

"Q. Where is he living now? A. He is living with his niece again.

"Q. Well, to your knowledge, from 1933, he has never lived with his wife? A. He has never lived with her, because I kept in close touch with him. I am positive of that." Transcript pp. 26, 27.

In our opinion, the judgment appealed from is sustained by a clear preponderance of the testimony of the credible witnesses in the case.

Judgment affirmed.